E-FILED
Thursday, 29 June, 2006 05:25:15 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| ROBERT BEEKS,<br>BARBARA BEEKS,<br><br>    Plaintiffs,<br><br>Vs.<br><br>PFIZER, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) CASE NO.: 06-4042<br>)<br>)<br>)<br>) |

**FILED**

JUN 2 9 2006

U.S. CLERK'S OFFICE
ROCK ISLAND, ILLINOIS

## COMPLAINT

### STATEMENT OF JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1332, for diversity of citizenship and Plaintiffs claim an amount in controversy exceeding $75,000.00.

### PARTIES

1. Plaintiff, ROBERT BEEKS, is over the age of 19 years, and is a resident citizen of Rock Island, Rock Island County, Illinois. Robert Beeks suffered a heart attack and stroke in December 2003, while using the prescription pain reliever, Bextra®.

2. Plaintiff, BARBARA BEEKS, is over the age of 19 years, and is a resident citizen of Rock Island, Rock Island County, Illinois. Barbara Beeks is, and was at all times relevant hereto, the spouse of Robert Beeks.

3. Defendant, Pfizer, Inc., is a corporation of the state of Delaware, with its principal place of business in New York. At all relevant times herein, Pfizer was in the business of promoting, manufacturing and distributing Valdecoxib, known more

commonly as Bextra®. Defendant does business in Illinois and at all relevant times hereto, marketed, promoted, warranted and sold Bextra® in Illinois.

## FACTS

4. Valdecoxib or Bextra® is a medication for relief of pain from osteoarthritis, rheumatoid arthritis, menstrual cramps and acute severe pain.

5. Robert Beeks was prescribed Bextra® in October 2002, for management of severe pain caused by arthritis in his knees. Robert Beeks used the Bextra® as prescribed daily for pain relief.

6. Robert Beeks suffered heart attack and then a stroke in early December 2003, as a proximate consequence of using Bextra®.

7. G.D. Searle & Company ("Searle"), a pharmaceutical company, was the pharmaceutical unit of the Monsanto Chemical Company. In April 2000, Searle and Monsanto merged with pharmaceutical manufacturer, Pharmacia, and as a result, Pharmacia became the successor-in-interest to Searle. On April 16, 2003, Pfizer acquired Pharmacia, its assets and liabilities included.

8. Searle actually filed the New Drug Application for Valdecoxib in 2000 and Pharmacia was awarded the Approval Letter by the Food and Drug Administration in November 2001. Distribution and sale throughout the United States, including the state of Illinois, was undertaken by Pharmacia, and subsequently Pfizer. Bextra® is the brand name used by Pfizer to market and distribute Valdecoxib.

9. Defendant Pfizer and its predecessors in interest marketed and promoted Bextra® as being safe and effective for relief of pain for patients like Robert Beeks.

10. Defendant Pfizer and its predecessors in interest did not inform patients

using Bextra® or their prescribing physicians that Bextra® carried an increased risk of cardiovascular injury and death, until approximately November and December 2004.

11.  Pfizer and its predecessors chose to place these adverse health risks on their consumers despite their knowledge at product launch and in post-marketing data thereafter that use of Bextra© carried significant risk factors. These adverse effects were realized in adverse event reports, in clinical trials conducted by Pfizer, and Pfizer studies which showed statistically significant increases in adverse cardiovascular events among Bextra® users. Bextra® is in a class of drugs known as cyclo-oxygenase 2 inhibitors (Cox-2 inhibitors), which has demonstrated an increased risk of cardiovascular and thrombotic events in users. This information, although documented and known to the pharmaceutical manufacturing industry, including Defendant Pfizer, was not disclosed to the consumers and prescribers of Bextra® until just recently. Even now, Plaintiffs is still learning of the dangers and injuries associated with Bextra®.

12.  If Defendant had not engaged in this conduct, patients and physicians would have switched from Bextra® to safer products or refrained wholly from its use.

13.  From 2001 through April 7, 2005, Defendant and its predecessors in interest, engaged in a scheme of marketing, distributing and selling Bextra® under the guise that it was safe and efficacious for patients.

14.  Plaintiffs allege that the marketing strategies, including the detail and sampling programs and direct-to-consumer advertising, of the Defendant targeted consumers to induce them to ask for and use Bextra®. At the time the Defendant and its predecessors distributed, manufactured and marketed Bextra®, Defendant and its predecessors intended that Plaintiffs would rely on the marketing, advertisements and

product information propounded by Defendant and its predecessors. Plaintiffs did not know, and could not have known, that Bextra® was unsafe or that it had caused injuries and death to the decedent, until April 7, 2005.

15. On April 7, 2005, Pfizer voluntarily removed Bextra® from all markets in the United States because of an increased risk of serious cardiovascular events in association with its use, including sudden cardiac death.

## COUNT ONE

### Strict Liability

16. Plaintiffs adopt and incorporate by reference all the above allegations.

17. At all times material hereto, the Defendant, Pfizer, has engaged in the business of selling, distributing, manufacturing, marketing and promoting Bextra®, which is unreasonably dangerous, and therefore defective.

18. At all times material hereto, Bextra® was sold, distributed, manufactured, promoted and marketed by the Defendant and was expected to reach, and did reach consumers, including the Plaintiffs without substantial change in the condition in which it left the possession of Defendant.

19. At all times material hereto, Bextra® was unreasonably dangerous, and therefore defective, because:

    a. Bextra® can cause strokes, heart attacks, and death.

    b. Bextra® was marketed and promoted for use as a pain reliever and by design and formulation, carried an unreasonable and unnecessary risk of serious injury and death. The risk of harm far outweighed the benefit of use.

4

    c.    Bextra® was insufficiently and inadequately tested, yet Defendant promoted it as being pharmaceutically tested and safe for use.

    d.    The instructions and warnings that accompanied Bextra® were inadequate to fully apprise the user of the full nature and extent of the risks and dangerous side effects associated with the use.

    e.    Bextra® was marketed and promoted direct to the consumer as being safe for treatment of pain, without risk of serious injury and death.

20.     At all times relevant here, there existed safer methods and products for pain relief.

21.     As a direct and proximate result of the actions and inactions of the Defendant as set forth above, Plaintiffs have sustained injuries and are entitled to damages enumerated below. The Plaintiffs' damages were not caused by an inherent characteristic of the product that cannot be eliminated, but instead were caused by the product being dangerously defective as outlined above.

22.     Defendant's actions and inactions as set forth above, were intentional and deliberate, and Plaintiffs are also entitled to punitive damages.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiffs demand judgment of the Defendant, Pfizer, Inc., for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT TWO

### Failure to Warn

23. Plaintiffs adopt and incorporate by reference all the above allegations.

24. Bextra® can be unreasonably dangerous, even when used for its intended purpose.

25. Defendant, as a manufacturer of pharmaceutical drugs, is held to the level of knowledge of an expert in the field, and further, Defendant had knowledge of the dangerous risks and side effects of Bextra®.

26. Robert Beeks did not have the same knowledge as Defendant and no adequate warning was communicated to him.

27. Defendant had a continuing duty to warn consumers, including the Plaintiffs, of its product, and the risks and dangers associated with it, and negligently and/or wantonly breached its duty as follows:

   a. Failed to include adequate warnings with the medications that would alert consumers to the dangerous risks and serious side effects of Bextra®.

   b. Failed to provide adequate post-marketing warnings and instructions after the Defendant knew or should have known of the significant risks of heart attack and death from the use of Bextra®.

   c. Failed to adequately warn Plaintiffs that Bextra® should not be used by patients with already compromised cardiovascular conditions.

   d. Failed to inform Plaintiffs that Bextra® had not been adequately and thoroughly tested for safety as a pain reliever.

28. As a direct and proximate result of the actions and inactions of the

6

Defendant as set forth above, Plaintiffs have sustained injuries and are entitled to damages enumerated below. Defendant's actions and inactions as set forth above, were intentional and deliberate, and Plaintiffs are also entitled to punitive damages.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiffs demand judgment of the Defendant, Pfizer, Inc., for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT THREE

### Breach of Warranty of Merchantability

29. Plaintiffs adopt and incorporate by reference all the above allegations.

30. When Defendant placed Bextra® into the stream of commerce, it knew that it would be used as a pain medication, and expressly and impliedly warranted to Robert Beeks that use of Bextra® was a safe and acceptable means of relieving pain and discomfort.

31. Robert Beeks reasonably relied upon the expertise, skill, judgment and knowledge of the Defendant and upon the express and/or implied warranty that Bextra® was of merchantable quality and fit for use to relieve pain symptoms.

32. In fact, Bextra® was not of merchantable quality and was not safe or fit for its intended use because it was unreasonably dangerous and unfit for the ordinary purposes for which it is used, in that Bextra® caused serious injuries and damages. The medication breached the warranties because it was unduly dangerous in expected use and did cause undue injuries and death to the Plaintiffs.

33. As a direct and proximate result of the actions and inactions of the Defendant as set forth above, Plaintiffs have sustained injuries and are entitled to

damages enumerated below. Defendant's actions and inactions as set forth above, were intentional and deliberate, and Plaintiffs are also entitled to punitive damages.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiffs demand judgment of the Defendant, Pfizer, Inc., for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT FOUR

### Negligence

34. Plaintiffs adopt and incorporate by reference all the allegations above.

35. Defendant negligently manufactured, designed, tested, researched and developed, labeled, packaged, distributed, promoted, marketed, advertised, and sold Bextra®, in the state of Illinois.

36. At all times material hereto, Defendant had a duty to exercise reasonable care in the design, manufacture, research and development, testing, processing, advertising, marketing, labeling, packaging, distribution, promotion and sale of its medications.

37. Defendant breached its duty and was negligent in its actions, misrepresentations, and omissions toward Plaintiffs in the following ways:

   a. Failed to use reasonable care to test Bextra® which, if properly performed, would have shown that Bextra® had serious side effects, including, but not limited to, risk of heart attack, blood clots and death;

   b. Failed to use reasonable care to give warnings and instructions with Bextra®.

c.  Failed to use reasonable care to design and manufacture a pain reliever safe for its intended use.

d.  Failed to use reasonable care in the marketing and promotion of Bextra®.

38. Defendant knew or should have known that Bextra® had unreasonably dangerous risks and caused serious side effects of which Plaintiffs would not be aware. Defendant nevertheless advertised, marketed, sold and distributed the medicine knowing that there were safer methods and products for pain relief.

39. As a direct and proximate result of the actions and inactions of the Defendant as set forth above, Plaintiffs have sustained injuries and are entitled to damages enumerated below.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiffs demand judgment of the Defendant, Pfizer, Inc., for compensatory damages in an amount determined by the jury to be necessary and just.

## COUNT FIVE

### Wantonness

40. Plaintiffs adopt and incorporate by reference all the allegations above.

41. Defendant wantonly and recklessly manufactured, designed, tested, researched and developed, labeled, packaged, distributed, promoted, marketed, advertised, and sold Bextra®, in the state of Illinois.

42. At all times material hereto, Defendant had a duty to exercise reasonable care in the design, manufacture, testing, research and development, processing, advertising, marketing, labeling, packaging, distribution, promotion and sale of Bextra®.

9

43. Defendant breached its duty and was wanton and reckless in its actions, misrepresentations, and omissions toward Plaintiffs in the following ways:

a. Failed to test Bextra® which, if properly performed, would have shown that Bextra® had serious side effects, including, but not limited to, heart attack, blood clots and death;

b. Failed to give full and adequate warnings and instructions with Bextra®.

c. Failed to design and manufacture a pain medication safe for its intended use.

d. Failed to truthfully market and promote Bextra®.

44. Defendant knew that Bextra® had unreasonably dangerous risks and caused serious side effects of which Plaintiffs would not be aware. Defendant nevertheless advertised, marketed, sold and distributed the medicine knowing that there were safer methods and products for pain relief.

45. As a direct and proximate result of the actions and inactions of the Defendant as set forth above, Plaintiffs have sustained injuries and are entitled to damages enumerated below. Defendant's actions and inactions as set forth above, were intentional and deliberate, and Plaintiffs are also entitled to punitive damages.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiffs demand judgment of the Defendant, Pfizer, Inc., for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## COUNT SIX

### Fraud, Misrepresentation and Suppression

46. Plaintiffs adopt and incorporate by reference all the allegations above.

47. Defendant fraudulently, intentionally and/or negligently misrepresented to Plaintiffs, the FDA, and general public, the safety of Bextra® and/or fraudulently, intentionally and/or negligently concealed material including adverse information regarding the safety of Bextra®.

48. Defendant made misrepresentations and actively concealed adverse information at a time when the Defendant knew, or should have known, that Bextra® had defects, dangers, and characteristics that were other than what the Defendant had represented to the FDA, and the consuming public, including the Plaintiffs. Specifically, the Defendant misrepresented to Plaintiffs, the FDA, and the consuming public that:

    a. Bextra®, when used as recommended, was safe for relief of pain symptoms.

    b. Bextra® had been pharmaceutically tested and was safe for use as a pain reliever, even in persons with cardiovascular conditions.

    c. Bextra® was fully and adequately tested.

    d. Bextra® had no serious adverse cardiovascular effects.

    e. Bextra® was safe and effective.

49. Defendant knew or should have known that these representations were false and that Plaintiffs would rely on them, leading to the use of Bextra®. Defendant knew that physicians had been told the same false and fraudulent information about Bextra®, and that Plaintiffs and prescribing physicians would be relying on information, advertisements and statements made by Defendant about the use, safety and efficacy of Bextra®.

50. At the time of Defendant's fraudulent misrepresentations and active concealment, Plaintiffs were unaware of the falsity of the statements being made and believed them to be true.

51. Plaintiffs justifiably relied on and/or was induced by the misrepresentations made by Defendant of the safety and use of Bextra®, and in fact, used Bextra® as recommended.

52. Defendant concealed the truth from Plaintiffs, and the consuming public about the real safety and risks of Bextra®.

53. Defendant had a post-sale duty to warn users and the public about the potential risks and complications associated with Bextra® in a timely manner. Much of the true information about Bextra® has only become known since its withdrawal on April 7, 2005.

54. The misrepresentations and active concealment by the Defendant constitutes a continuing tort against Plaintiffs.

55. As a direct and proximate result of the actions and inactions of the Defendant as set forth above, Plaintiffs have sustained injuries and are entitled to damages enumerated below. Defendant's actions and inactions as set forth above, were intentional and deliberate, and Plaintiffs are also entitled to punitive damages.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiffs demand judgment of the Defendant, Pfizer, Inc., for compensatory and punitive damages in an amount determined by the jury to be necessary and just.

## CLAIM FOR DAMAGES

Plaintiff, ROBERT BEEKS, has sustained injuries and damages, and does make

claim for these:

    a.    Reasonable and necessary health care expenses incurred in the past;

    b.    Reasonable and necessary health care expenses which will be incurred in the future;

    c.    Physical pain and suffering in the past;

    d.    Physical pain and suffering which will be endured in the future;

    e.    Mental anguish suffered in the past;

    f.    Mental anguish which will be endured in the future;

    g.    Physical disability and impairment, past and future;

    h.    Lost wages in the past and future loss of wage earning capacity; and

    i.    All other incidental and consequential damages, fees and expenses.

Plaintiff, BARBARA BEEKS has sustained the loss of companionship, services and intimacy of her spouse as a direct and proximate result of the physical and mental injuries suffered by Robert Beeks.

_____
Attorney For Plaintiffs

**PLAINTIFFS DEMAND A TRIAL OF ALL ISSUES BY STRUCK JURY.**

*Please Serve the Defendant as Follows:*
Pfizer, Inc.
Agent: CT Corporation System
208 South LaSalle Street, Suite 814
Chicago, IL 60604

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

E-FILED
Thursday, 29 June, 2006 05:25:25 PM
Clerk, U.S. District Court, ILCD

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Robert O. Beeks and Barbara Beeks

**DEFENDANTS**
Pfizer, Inc.

FILED
JUN 29 2006
U.S. CLERK'S OFFICE
ROCK ISLAND, ILLINOIS

(b) County of Residence of First Listed Plaintiff: **Rock Island**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: **New York City**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
G. Trent Marquis, VanDerGinst Law, PC,
400 16th St, Rock Island IL 61201; (309) 788-5297

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☒ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | | | |
| | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 446 Amer. w/Disabilities - Other / ☐ 555 Prison Condition | | | |
| | ☐ 440 Other Civil Rights | | | |

## V. ORIGIN (Place an "X" in One Box Only)
- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☒ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC Section 1332

Brief description of cause:
Bextra Product Liability

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE Charles R. Breyer
DOCKET NUMBER MDL 1699 USDC ND CA

DATE: 06/29/2006
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____